OPINION
Defendant-appellant, Craig Guenther, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, ordering him to pay spousal support, obtain life insurance to secure his spousal support obligation, and exclusively pay credit card debts. The decision of the trial court is affirmed as modified.
Appellant and plaintiff-appellee, Beverly Guenther, were married on April 25, 1981. On March 6, 2000, appellee filed for divorce. At the time of the divorce, the three children of the marriage were ages eighteen, seventeen, and fifteen. Appellant is a forty-three-year-old high school graduate with an income of approximately $44,500 per year. Appellee is a forty-seven-year-old high school graduate with an income of $20,800 per year.
The trial court ordered an equal division of the marital assets and ordered appellant to pay $738 per month in child support. Appellant was further ordered to exclusively pay the Visa credit card debt. The trial court also ordered appellant to pay appellee $550 per month for spousal support and to obtain life insurance to secure his spousal support obligation. This appeal follows in which appellant raises three assignments of error:
Assignment of Error No. 1:
 The trial court erred in ordering appellant to pay the credit card debt.
The reviewing court must view property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the parties' marital assets and liabilities. Briganti v. Briganti (1984), 9 Ohio St.3d 220,222. The term abuse of discretion connotes more than an error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court but must be guided by the presumption that the findings of the trial court are correct. Brewer v. Brewer (Apr. 27, 1998), Warren App. No. CA97-01-009, unreported, at 6.
The trial court determined appellant should pay the entire Visa debt pursuant to a temporary order regarding payment of marital debts during the pendency of the divorce. The temporary order dictates that debts will be paid according to "the established practices of the household."
Appellant argues that based upon the size of the approximately $1,500 Visa debt, the past practice of the household would have been to pay the Visa debt with funds from the marital savings account. Appellant asserts the Visa debt should not be paid with his post decree earnings but should be paid with marital assets so both parties pay fifty percent of the debt. Furthermore, appellant argues appellee was prohibited from incurring the debt based upon a restraining order. The restraining order prohibited appellee "from incurring any debt or making any credit card purchase on any account either in the other party's name or in joint names."
Appellee testified, and presented receipts to confirm, that the Visa debt was incurred on a card held only in her name for new prescription glasses, contact lenses, clothing, and back-to-school items for their children. Appellee testified these items constituted ordinary household expenses and were charged on a credit card as was the established practice of the household. Furthermore, appellee maintains she was forced to purchase those items with the Visa credit card because appellant would not contribute cash funds for the purchases required by the children. Furthermore, appellee testified that the approximately $1,500 expended was the ordinary, reasonable, and necessary expense for three children requiring these items.
There was no testimony to refute appellee's assertion that it was the established practice of the household to purchase contact lenses, prescription glasses, and back-to-school items together and incur a $1,500 debt at one time. There was also no testimony to refute what was the parties' past practice of appellant exclusively paying for those usual yearly purchases. The restraining order did not prohibit appellee from incurring debt in her name. Therefore, the trial court determined these debts were routine household expenses as the children regularly obtain new clothes and "go to the eye doctor each year before school starts."
In ordering appellant to pay the entire Visa debt, the trial court was simply enforcing the initial order regarding the payment of marital debts incurred according to the established practices of the household. Consequently, the trial court's decision was not unreasonable, arbitrary, or unconscionable. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 The trial court erred in ordering the amount and commencement date of spousal support.
The trial court is given wide latitude in determining the amount of spousal support to be awarded, as long as the trial court properly considers the statutory factors of R.C. 3105.18(C).[1] Schneider v.Schneider (1996), 110 Ohio App.3d 487, 494. An appellate court may not substitute its judgment for that of the trial court and a trial court's decision regarding spousal support will be reversed only if found to be an abuse of that discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,130-131. A trial court is not required to enumerate each factor in R.C.3105.18(C)(1), but must merely provide a sufficient basis to support its award. Bowen v. Bowen (1999), 132 Ohio App.3d 616, 628. Further, this court should be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
Appellant argues that the trial court was unreasonable in establishing the amount of spousal support. Appellant maintains that based upon the amount of child and spousal support, he receives thirty-nine percent of the total after-tax income while appellee receives sixty-one percent of the after-tax income. Appellant moved to reduce child and spousal support when he was required to accept another position with his employer and his earnings were diminished. On January 23, 2001 the amount of child support was recalculated but spousal support was not reduced.
Appellee argues her monthly income is insufficient to pay all her expenses since she must borrow funds in order to pay appellant for his share of the marital equity in the home. While caring for the children, appellee is also currently attempting to obtain a college degree. Appellee expects obtaining a degree will take another four years, and her income is restricted until she graduates.
The trial court awarded spousal support of $550 per month for four years. The trial court stated it considered all the factors in R.C.3105.18 when ordering spousal support and in determining the amount of spousal support. The trial court specifically found that the length of the marriage was over eighteen years. Appellant earns more than twice what appellee earns. Appellee remained home to be the primary caretaker of the children during the marriage, and this necessarily decreased her ability to increase her earning capacity. After returning to work appellee could only obtain part-time employment. Appellee has only been able to find full-time employment in the past two years. Appellant is forty-three years old while appellee is forty-seven years old. Appellee has been attending school in an attempt to increase her ability to earn more income.
Given its findings, the trial court provided a sufficient basis to justify the amount of the spousal support award. See Bowen,132 Ohio App.3d at 628. Therefore, the amount of spousal support is not unreasonable, arbitrary, or unconscionable. This court notes that the division of assets reflected in the order is not equal, but an equitable division need not mean an equal division. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. Absent an abuse of discretion, this court is not free to substitute its judgment for that of the trier of fact. Id.
Modifications of spousal support are reviewable under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. The magistrate set September 5, 2000 as the commencement date for spousal support. The trial court changed the commencement date to January 26, 2001. Appellant argues that since he paid all of the parties' expenses while they were living together during the pendency of the divorce, the new commencement date effectively extends the spousal support order by nearly six months. Appellant argues he should be given credit toward spousal support for paying the parties' expenses from September 5, 2000 to January 26, 2001.
Appellee argues that since the parties continued to live together until January 2001, there was no need for spousal support until they separated. Appellee contends the decision of the magistrate to begin payments on September 5, 2000 was based upon the assumption that the parties would be separating on or about that time. Appellee further argues that the decision of the trial court to set the commencement date for January 26, 2001 was based upon when the actual separation occurred.
Appellee testified that appellant had not been following the temporary order regarding payment of marital debts. Appellee testified appellant was not contributing funds for groceries, child support, or upkeep on the house and should therefore receive no credit toward spousal support. While appellant disputes appellee's testimony regarding his contributions, it was undisputed that appellant did not begin paying child support or spousal support on September 5, 2000.
The change of date from September 5, 2000 to January 26, 2001 does not change the length of time appellant is required to pay spousal support. Spousal support will still be terminated "upon the death of appellee or appellant, or upon appellee's remarriage or cohabitation or four years," whichever occurs first. The contributions appellant is attempting to obtain as credit toward his spousal support obligations were already his responsibility under the temporary order regarding payment of marital debts. Instead of requiring appellant to pay the back spousal and child support, the trial court determined there was "no arrearage in spousal and child support as of January 22, 2001," and made the payments effective January 26, 2001. The change of the commencement date was not unreasonable, arbitrary, or unconscionable since appellant never began spousal support payments on September 5, 2000. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
 The trial court erred in ordering appellant to obtain life insurance to secure his spousal support obligations.
A reviewing court may modify or reverse an award of spousal support only if it finds that the trial court abused its discretion. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67. The judgment entry and decree of divorce in this case provide that the obligation to pay spousal support "shall terminate upon death of appellee or appellant, * * *, whichever event occurs first."
In Woodrome v. Woodrome (Mar. 26, 2001), Butler App. No. CA00-05-074, unreported, at 3, this court stated that for a spousal support order to continue after death, the order must "expressly provide" that spousal support shall continue beyond the obligor's death. Since appellant's spousal support obligation would terminate upon his death, the portion of the divorce decree ordering appellant to maintain life insurance to secure his spousal support obligation is inappropriate. Therefore, the third assignment of error is well-taken and that portion of the trial court's order requiring appellant to obtain life insurance to secure his spousal support obligation is vacated.
Judgment affirmed as modified.
YOUNG, P.J., and VALEN, J., concur.
[1] R.C. 3105.18(C)(1) provides: In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * * the court shall consider all of the following factors:
(a) The income of the parties[;]
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party[;]
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.